McMULLEN, Respondent, v. GRAHAM, Appellant

(28 N. W.2d 747)

(File No. 8899. Opinion filed August 29, 1947.)
Rehearing Denied October 6, 1947.

G. F. Johnson, of Gregory, for Appellant.

J. F. Frame, of Burke, and Hooper & Herman, of Gregory, for Respondent.

HAYES, J.  Plaintiff brought suit to recover the purchase price paid for a furnace stoker.  Among other things, his complaint alleges an undertaking on the part of defendant to sell to plaintiff a stoker to work with a steam heating plant, the failure of defendant to furnish a suitable stoker and the sale of a stoker to plaintiff which a "plumber" deemed unfit for plaintiff's furnace.  Defendant denied the alleged unfitness of the stoker.  The case was tried to the court without a jury and judgment was entered for plaintiff.

The trial court found that defendant's storekeeper had represented that the stoker could be installed in plaintiff's heating plant and would operate satisfactorily, that the stoker sold by defendant was not suitable for a steam heating plant without additional fixtures, that the party who was to install the same had advised plaintiff and defendant that the stoker could not be made to work without considerable cost, and that defendant never offered to place the additional fixtures thereupon necessary to make it work.

Defendant's appeal presents the sole question whether the facts established by the evidence are such as to entitle plaintiff to the recovery awarded.

The record discloses that the material facts are not in dispute.  Plaintiff's daughter went to defendant's store, saw a stoker and talked with defendant's storekeeper about it.  During the conversation that followed the storekeeper said he was sure the stoker was O. K. and he thought it would work all right.  It was understood that a third party, to whom we will refer as the furnacer, was to install the stoker for plaintiff at the latter's expense after the supply of ordinary furnace coal on hand had been used up. The storekeeper was informed that the stoker was intended for a steam heating plant.  Two days after her first visit to see the same, Sunday intervening, plaintiff's daughter stopped at the store and paid for the stoker.  It does not appear that she talked with the defendant or the furnacer, or with the storekeeper more than the one time, before making the purchase.

Several weeks after the purchase as recited above the furnacer looked over the furnace, took some measurements

of the stoker, concluded that it was necessary to have a certain type of switch for a proper installation and expressed varying opinions respecting the suitability of the stoker for the plant for which it was purchased. To some of the interested parties he at times expressed the view that the stoker would not work. At other times he stated that he thought the stoker could be installed if lowered down to a sufficient level. Due to the position of the furnace and the basement walls it would have required some digging to make room for the stoker. Prior to the institution of this action for a recission of the sale and at the request of the furnacer the defendant ordered and obtained the required switch. No effort was made to install the stoker. Suit was instituted as a result of the opinions expressed by the furnacer.

On direct examination, referring to statements made by the furnacer, plaintiff's daughter testified that he had said that there might be a possibility of installing the stoker other than in the front of the furnace and that she thought that such statement had been made to both her and her father, the plaintiff. The plaintiff, referring to a conversation he had had with defendant's storekeeper, testified on direct examination that he told the storekeeper to "see Graham and see if we could fix it up". When asked during such examination what he meant by such a direction to the storekeeper the plaintiff answered: "I thought probably it (the stoker) could be installed some way."

It appears to us that the testimony of the furnacer supports the view expressed by plaintiff as above set forth. Called as a witness for plaintiff the furnacer testified that he found "that the stoker can be put in just one way, because on three sides you cannot put it in." When asked his decision whether or not the stoker would fit the furnace, he answered: "If you put it on the side it would be too short." Viewed in the light of other testimony in the case it appears that this answer by the witness should be read as follows: "If you put the stoker on the side the space or distance between the furnace and the basement wall is too

short." The furnacer further testified on direct for plaintiff: "It (the stoker) can be put in a steam furnace but you had to have the specials for it." The only "special" mentioned in the testimony is the limit switch which defendant obtained as above pointed out. The furnacer was acting for plaintiff when he ordered the desired switch. On cross-examination and when called as a witness for defendant the furnacer testified that the stoker sold to plaintiff would work satisfactorily installed with the proper switch.

For the record testimony before us we cannot escape the conclusion that the learned trial judge erred in finding that the stoker sold by defendant was not suitable for plaintiff's heating plant and that defendant had never offered to furnish the needed control switch or what was deemed necessary to a proper installation of the stoker.

Briefs of counsel for both parties direct the attention of this court to provisions of our code relating to an implied warranty. The decision we have reached obviates the necessity of construing and classifying the statements of the storekeeper. No breach of warranty, either express or implied, is sufficiently established.

The judgment is reversed.

All the Judges concur.